FILED
2019 Jan-18  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **VICTOR REVILL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | **Case No. _____** |
| **PAMELA CASEY, SCOTT** ) | |
| **GILLILAND, SUE ASHWORTH, AND** ) | **JURY TRIAL DEMANDED** |
| **BRYAN K. RATLIFF,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**COMPLAINT**

**STATEMENT OF JURISDICTION**

1. Plaintiff brings this action for damages and other relief for violations of the Fourth Amendment to the United States Constitution as made applicable to the states by the Fourteenth Amendment to the United States Constitution to not be made subject of an unreasonable seizure. These claims are being brought against employees of Blount County, the Blount County Sheriff's Department and/or the State of Alabama through 42 U.S.C. § 1983 which establishes this court's jurisdiction. At all times material to Plaintiff's claims, the Defendants were acting under color of state law and were state actors. Plaintiff also makes pendent claims under the laws of Alabama as set forth below.

2. This Court also has jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367.

3. The unlawful acts alleged herein occurred in Blount County, Alabama.  Thus, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

**STATEMENT OF THE PARTIES**

4. Plaintiff VICTOR REVILL is an individual over the age of nineteen (19) years and a resident of the United States currently residing in Alabama.

5. Defendant PAMELA CASEY is an individual over the age of nineteen (19) years and a resident of the United States. At all times relevant to this Complaint, Defendant Casey was the Blount County District Attorney and an employee or agent of Blount County, Alabama and/or the State of Alabama. At all times relevant to this Complaint, Defendant Casey was acting under color of state law and in the course and scope of her employment as the Blount County District Attorney. Defendant Casey was also acting in her capacity as a policy maker at all times in this situation as she was a policy making official for law enforcement policy including determining probable cause or arguable probable cause to make an arrest in any situation. Defendant Casey is sued in her individual capacity.

6. Defendant SCOTT GILLILAND is an individual over the age of nineteen (19) years and a resident of the United States. At all times relevant to this Complaint, Defendant Gilliland was a Blount County Assistant District Attorney and an employee or agent of Blount County, Alabama and/or the State of Alabama. At all times relevant to this Complaint, Defendant Gilliland was acting under color of state law and in the course and scope of his employment as a Blount County Assistant District Attorney. Defendant Gilliland is sued in his individual capacity.

7. Defendant SUE ASHWORTH is an individual over the age of nineteen (19) years and a resident of the United States. At all times relevant to this Complaint, Defendant Ashworth was a Blount County Sheriff's Deputy and an employee or agent of the State of Alabama. At all times relevant to this Complaint, Defendant Ashworth was acting under color of state law and in the course and scope of her employment as a Blount County Sheriff's Deputy. Defendant Ashworth is sued in her individual capacity.

8. Defendant BRYAN K. RATLIFF is an individual over the age of nineteen (19) years and a resident of the United States. At all times relevant to this Complaint, Defendant Ratliff was a Blount County Sheriff's Deputy and an employee or agent of the State of Alabama. At all times relevant to this Complaint, Defendant Ratliff was acting under color of state law and in the course and scope of his employment as a Blount County Sheriff's Deputy. Defendant Ratliff is sued in his individual capacity.

## STATEMENT OF THE FACTS

9. Plaintiff is an attorney and the owner of the Revill Law Firm, located in Birmingham, Alabama. Plaintiff is licensed to practice law in the State of Alabama and represents clients in criminal defense, civil rights, family law, personal injury and employment law cases. At all times relevant to this Complaint, Megan Garcia was an associate attorney working at Plaintiff's firm.

10. On February 23, 2017, Plaintiff and Ms. Garcia appeared at a Protection from Abuse hearing in Blount County with one of their clients, Lloyd Edwards. Prior to the actual proceedings, Plaintiff, Ms. Garcia, and Mr. Edwards had a discussion with opposing counsel regarding the matter. During that conversation, it was revealed that the client's wife (who was seeking the protection from abuse order) had sent the Plaintiff's client explicit pictures and videos of herself and "sexting" him after she had filed the Protection from Abuse petition.

11. After the hearing, Plaintiff and Ms. Garcia had another discussion with their client regarding the proceedings and the next steps in their representation of him in that matter. Mr. Edwards informed Plaintiff and Ms. Garcia that he had evidence of the communications referenced in ¶ 12 on three cell phones that he owned. He also informed Plaintiff and Ms. Garcia that only one of the three cell phones still had service. Plaintiff asked Mr. Edwards to give him the two cell phones that were no longer in service, so they could retrieve the images and texts from the cell

phones upon their return to the office. Mr. Edwards handed over the two cell phones and kept the

working cell phone in his possession. Plaintiff then handed the two cell phones to Ms. Garcia and

she placed them in her briefcase/satchel.

12. After an approximately fifteen-minute conversation, the three of them exited the Blount

County courthouse.

13. As soon as they exited the courthouse doors, Defendant Ratliff approached Mr.

Edwards, who was walking ahead of his attorneys.  Defendant Ratliff told Mr. Edwards that he

had a warrant to search his person and his vehicle. Plaintiff instructed Mr. Edwards to comply with

the officer.

14. Defendant Ashworth then approached. She introduced herself and handed Plaintiff a

copy of the search warrant. The search warrant specifically allowed the Defendants to search "THE

FOLLOWING PERSON OR PLACE: THE PERSON OF LLOYD CLINTON EDWARDS AND

THE VEHICLE DRIVEN BY LLOYD CLINTON EDWARDS."

15. Plaintiff reviewed the warrant and the following conversation took place:

REVILL: "The warrant that you all have is for his person and for his vehicle."

ASHWORTH: "That's correct, that's correct."

REVILL: "So, he has given the phone that is on his person."

RATLIFF: "Ok. I have video of him handing the phone to you and you handing the
phone to her [indicating Ms. Garcia] and it's in the satchel right now."

REVILL: "You all do have that . . . but when you came to him to serve this search
warrant that was not on his person. So, you are not entitled to that."

RATLIFF: "Well alright then. We'll go that other route to get that other phone."[1]

16. Plaintiff refused to voluntarily consent to the search of the briefcase/satchel which

contained the property of Plaintiff's client.  The Plaintiff's client's phone and information on that

---

[1] A police body cam video recorded the exchange. The noted transcript is from that recording.

phone were entrusted to him as evidence to be used in the adversarial proceeding of the Protection from Abuse matter and is therefore encompassed as work product and part of the attorney-client relationship. In refusing to allow a search of his person, the Plaintiff exercised his constitutional right to refuse consent to a search. Defendants Ashworth and Ratliff also took action in and participated in the Plaintiff and Ms. Garcia's arrest along with all other subsequent actions outside the courthouse.

17. Plaintiff handed the warrant back to Defendant Ashworth and again instructed his client to comply with the warrant. Plaintiff then asked Defendant Ratliff: "Are we being detained?" To which Defendant Ratliff responded, "At this moment in time we are going to detain you until we determine the next course of action."

18.  Meanwhile, Defendant Ashworth proceeded to call Defendant Casey and Defendant Gilliland. Defendant Ashworth told Defendants Casey and Gilliland (on a conference call) as follows: "we're standing here. We have it on video that he handed his cell phone to his attorney . . . one and then handed it to another and it's in the satchel that is right here."

19. After listening for a moment, Defendant Ashworth responded: "they're not denying it. We have them on video... What I have is his person and vehicle." She then turned to Plaintiff and Ms. Garcia and informed them, "we either need the phone out of the satchel or we will have to detain you and get a search warrant to get the phone."

20. Plaintiff responded as follows: "We're not going to give you . . . anything that's on our person that you don't have a right to. So, if you detain us . . . you have to have certain constitutional safeguards to do that. But if you're gonna detain us, then detain us. We're not gonna run."

21. Defendant Ashworth then spoke to Defendant Casey and possibly others on the phone briefly. Under the authority and instruction of Defendant Casey and others, Defendant Ashworth

then informed Plaintiff and Ms. Garcia that they were both under arrest for obstructing governmental operations. To which Plaintiff responded, "this is definitely an unlawful arrest, but if we're under arrest, we're under arrest." Plaintiff and Ms. Garcia did not prevent Defendants Ashworth or Ratliff from seizing the cell phones.

22. Plaintiff asked Defendant Ashworth if she was sure she wanted to arrest them for this and she asked him, "are you subject to the law?" When he responded he was, she said, "then you are under arrest." Defendant Ashworth and Ratliff then performed the arrest that was commanded by Defendant Casey. It is on information and belief that Defendant Gilliland consulted in the discussions and decision to arrest the Plaintiff. Defendant Ratliff further verbally confirmed that he was arresting the Plaintiff and Ms. Garcia under Defendant Ashworth's orders.

23. Plaintiff confirmed with Defendants Ratliff and Ashworth that the search warrant for his client had been served after the client had given the cell phones to his attorneys. As such, neither Plaintiff nor Ms. Garcia took any actions to prevent the Defendants from executing the search warrant. Plaintiff also confirmed that they were not doing anything to stop the officers from searching the satchel if they chose to do so. They were simply not consenting to be searched.

24. Plaintiff was then made to stand outside the front door of the Blount County Courthouse for thirty or more minutes in handcuffs with, at one point, at least three City of Oneonta police officers present. During that time dozens of people entered and exited the courthouse through the doors where they were standing. Defendant Ashworth did not call for transportation to take them to the jail for at least six (6) minutes.

25. After Plaintiff had been placed under arrest and placed in handcuffs, Defendant Gilliland came out of the courthouse, stood in the doorway holding the door open, and said to Plaintiff and Ms. Garcia, "Y'all the ones knowingly in possession of child pornography? That was

a bad mistake." He then returned inside the building. There were several other people present when he made this comment. This statement was made with no actual knowledge or reason to believe that the Plaintiff knew of any child pornography on the cell phones, of which he did not. The only information Plaintiff had of the contents of the cell phones was from his client, Mr. Edwards, detailed above. Defendant Gilliland's only knowledge came from a source, Mr. Edwards' wife, that Defendant Gilliland knew was hostile towards Mr. Edwards and his attorneys, the Plaintiff and Ms. Garcia.

26. The entire incident was recorded on the body cam of one of the City of Oneonta Police Officers. That officer can be heard saying that he had been asked to record the search of the client and his vehicle but had instead been asked to stand there and "keep an eye" on the two attorneys. At one point, he discussed the situation with other City of Oneonta Police Officers who questioned Defendant Ashworth's actions because the search warrant did not include the satchel. The officer recording the incident indicated that he did not want to get involved with the situation.

27. After standing outside in handcuffs for thirty minutes or more, Plaintiff was taken to the Blount County Jail and booked. Plaintiff was placed into a cell. Plaintiff remained in custody in the holding cell for approximately four (4) hours. He was required to pay for a $3,000 bond for his release instead of being released on his own recognizance. Plaintiff also was required to pay a $3,000 bond for Megan Garcia to be released.  When Plaintiff was released, he was informed that in addition to Obstruction of Governmental Operations, he was also being charged with Refusing to Permit Inspection.

28. On the warrant that was issued for Plaintiff's arrest, Defendant Ashworth stated under oath as follows: "I was attempting to serve a search warrant on Lloyd Clinton Edwards. Victor Revill and Megan Garcia were in possession of an item subject to the search warrant and refused

to hand over said item." On the face of the warrant, there was no language allowing the search of the Plaintiff, Ms. Garcia, or any items possessed by them; it was for Mr. Edwards' person and vehicle. There was no probable cause or arguable probable cause for Plaintiff's arrest.

29. Following Plaintiff's arrest, Defendant Casey made the following statement to the press:

> Casey on Friday said it is a crime for anyone, even a lawyer, to intentionally prevent a public servant from performing a governmental function or refuse to permit inspection of property that a public servant is legally authorized to inspect. In this case, she said, officers had a search warrant seeking recovery of any device or devices, including the subject's cell phone or cell phones, which were believed to contain child pornography.
>
> "Within minutes of learning that their client was alleged to have used his cell phone to produce and/or view child pornography, Mr. Revill and Ms. Garcia took possession of their client's phones and attempted to conceal the phones from law enforcement," Casey said. "Such acts are not only illegal, but unethical. Rule 3.4 of the Alabama Rules of Professional Conduct provides that a lawyer shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act. My office will not be intimidated by a lawyer or anyone else who continues to attempt to manipulate the judicial process and/or criminal justice system by public grandstanding."

These statements were published online on March 17, 2017. The article has been shared online hundreds of times.

30. Similar to Defendant Gilliland, this statement was made with no actual knowledge or reason to believe that the Plaintiff knew of any child pornography on the cell phones, of which he did not. The only information Plaintiff had of the contents of the cell phones was from his client, Mr. Edwards, detailed above. Defendant Casey's only knowledge came from a source, Mr. Edwards' wife, that Defendant Casey knew was hostile towards Mr. Edwards and his attorneys, the Plaintiff and Ms. Garcia. Both statements by Defendant Casey and Defendant Gilliland were false and at the least reckless. They were made with no factual basis and were defamatory.

31. Shortly after the charges were brought, Plaintiff's attorney was informed that Defendant Casey had recused herself from the prosecution.

32. Later, Robert Crocker and Anna Sparks were appointed as temporary assistant district attorneys to prosecute the case.

33. Although Defendant Casey purportedly recused herself and did not attend the actual trial, she played an active part in prosecuting the case along with Defendant Gilliland. For example, on or about March 16, 2018, only two weeks before Plaintiff's trial, Defendant Casey met with Plaintiff's former client, Mr. Edwards, at Defendant Casey's office to prepare him for the trial and to draft his statement regarding the incident.

34. Defendant Casey initiated, facilitated and lead the meeting.

35. On March 29, 2018, the Plaintiff and Ms. Garcia were tried for Obstructing Governmental Operations (Ala. Code §13A-10-2) and Refusal to Permit Inspection (Ala. Code §13A-10-3). At the close of the State's case, the Defense moved for an acquittal and the trial court dismissed the charges against Plaintiff and Ms. Garcia because there was no evidence to support them. Consequently, Plaintiff was acquitted of all charges.

36. Since neither probable cause, arguable probable cause, nor exigent circumstances were present, Defendants Ratliff and Ashworth (on the authority of Defendants Casey and Gilliland) falsely arrested Plaintiff without a warrant and without probable cause or arguable probable cause. Defendants Casey and Gilliland instituted criminal proceedings against Plaintiff without probable cause or arguable probable cause. These charges, which would be viewed as baseless by an impartial observer, were continued to be pursued by Defendants Casey, Ratliff, Ashworth, and Gilliland.

37. At all relevant times, all Defendants were acting within the scope of their discretionary authority as Blount County sheriff's deputies or as Blount County district attorneys and/or as employees of the State of Alabama.

38. The conduct of these government officials violated Plaintiff's Fourth Amendment constitutional right to be secure in his person. That right was clearly established by the Plaintiff on February 23, 2017, and then violated when Plaintiff was unlawfully arrested, detained, and imprisoned. As such, these Defendants had fair warning that their alleged actions toward the Plaintiff were unconstitutional.

39. The actions of the deputy sheriffs, taken on behalf of the Blount County Sheriff's Office and the State of Alabama deprive and/or chill federal constitutional rights, state constitutional rights and state statutory rights of all similarly situated individuals. Upon information and belief, these actions were taken pursuant to a governmental custom, policy and/or procedure of unlawfully detaining, arresting, and prosecuting citizens who exercise their constitutional right to refuse consent to an unlawful search or seizure.

40. This belief is based, in part, on the fact that the actions of these Defendants were ordered, authorized, and/or ratified by the Blount County District Attorney and Assistant District Attorney, Defendants Pamela Casey and Scott Gilliland and based on Defendant Casey's public statement evidencing her belief that Plaintiff was attempting to "manipulate the judicial process and/or criminal justice system by public grandstanding" when Plaintiff refused to voluntarily consent to a warrantless search.

41. Accordingly, these customs, policies and/or procedures should be preliminarily and permanently enjoined. In order to counter the unlawful customs, policies and/or procedures

described herein, the named Defendants and all other county and state employees must be trained and educated in order to protect the constitutional, statutory, and common law rights of citizens.

42. As a direct and proximate result of being unlawfully detained, unlawfully arrested, maliciously prosecuted for exercising his constitutional right to refuse an unlawful search, as a result of being publicly defamed and humiliated with malice, and all other actions by Defendants Ratliff, Ashworth, Casey and Gilliland, the Plaintiff has suffered significant damages.

43. As a direct and proximate result of the Defendants' actions, Plaintiff has suffered damage to his professional reputation in the legal community. Specifically, Plaintiff has lost several clients who had indicated their intentions to retain Plaintiff to handle their legal matters, but instead hired other attorneys after becoming aware of Plaintiff's arrest. Plaintiff had to withdraw his representation of his client, Lloyd Edwards. There are an unlimited number of potential clients that would have hired Plaintiff, but for their learning of Plaintiff being arrested and having a criminal case pending.  This damage to Plaintiff's professional reputation has resulted in significant financial damages manifested as lost revenue.

44. Plaintiff had to spend countless hours preparing for his defense against this unlawful charge and arrest. Plaintiff also incurred substantial attorneys' fees in his defense of the unlawful charges and arrest.

45. Plaintiff had to spend a substantial amount of time trying to convince existing clients to allow him to continue representing them. Plaintiff continues to suffer the aggravation and incur the expense of having the charges against him expunged.

46. Plaintiff missed his first birthing class to prepare him and his wife for the birth of their first child, a class that took place on the day Plaintiff was arrested. At the time of Plaintiff's arrest, his wife was nine months pregnant and the arrest and resulting publicity caused undue stress on

Plaintiff and his wife. Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, and mental anguish among other injuries and damages.

**COUNT ONE**
**UNLAWFUL INVESTIFATORY DETENTION**
**Violation of the Fourth and Fourteenth Amendments**
Pursuant to 42 U.S.C. §1983
(Against Defendants Sue Ashworth and Bryan Ratliff for Injunctive Relief)

47. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

48. Under the Fourth Amendment to the United States Constitution, Plaintiff has a right to be free from unreasonable searches and seizures, including search and seizure of his person and effects. Plaintiff also has a constitutional right to remain silent and to peaceably refuse consent to a search, regardless of whether an officer lawfully requests to search Plaintiff's person or belongings.

49. On February 23, 2017, Defendants Ashworth and Ratliff deprived Plaintiff of his Fourth Amendment right to be secure in his person and free from unreasonable seizures by placing Plaintiff in handcuffs and unlawfully detaining and arresting him in front of the Blount County Courthouse for over 30 minutes.

50. This action took place with full knowledge that the search warrant did not include Plaintiff's person or Ms. Garcia's satchel. This detention was not conducted in good faith and with disregard to Plaintiff's constitutional rights.

51. The Defendants' lacked probable cause and arguable probable cause to detain and arrest the Plaintiff. Defendant Ratliff admits on video that Plaintiff and his client were not served with the search warrant until after the cell phones were given to Plaintiff. As such, Plaintiff did not attempt to conceal evidence in contravention of the search warrant.

52. Defendant Ratliff's statement that Plaintiff was being detained until they could determine the next course of action further establishes that Defendants did not have any reasonable, articulable suspicion of illegal activity or arguable probable cause, but instead were trying come up with a reason to continue to hold the two attorneys.

53. Defendants Ashworth and Ratliff acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff of his constitutional rights when they unlawfully detained and arrested him.

54. This belief is based, in part, on the fact that their actions were ordered, authorized, and/or ratified by the Blount County District Attorney and Assistant District Attorney and based on Defendant Casey's public statement evidencing her belief that Plaintiff was attempting to "manipulate the judicial process and/or criminal justice system by public grandstanding" when he refused to voluntarily consent to a warrantless search.

55. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT TWO
### UNLAWFUL INVESTIGATORY DETENETION
### Violation of the Fourth and Fourteenth Amendments
Pursuant to 42 U.S.C. §1983
(Against Defendants Pamela Casey and Scott Gilliland)

56. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

57. Under the Fourth Amendment to the United States Constitution, Plaintiff has a right to be free from unreasonable searches and seizures, including search and seizure of his person and effects. Plaintiff also has a constitutional right to remain silent and to peaceably refuse consent to

a search, regardless of whether an officer lawfully requests to search Plaintiff's person or belongings.

58. On February 23, 2017, Defendants Casey and Gilliland deprived Plaintiff of his Fourth Amendment right to be secure in his person and free from unreasonable seizures by directing the Blount County sheriff's deputies to arrest him in front of the Blount County Courthouse for approximately 30 minutes or more, with full knowledge that there was no warrant, probable cause, arguable probable cause, reasonable suspicion of unlawful activity, or any other lawful reason justifying the detention.

59. Upon Plaintiff's peaceful refusal to voluntarily consent to the search of the satchel, Defendant Ashworth relayed that information to Defendants Casey and Gilliland, as she was required to do under Alabama law. *See McMillian v. Monroe County*, 520 U.S. 781, 790-91 (1997). Defendants Casey and Gilliland then instructed Defendant Ashworth to arrest Plaintiff if he refused to turn over the cell phones believed to be in the satchel. As such, Defendants Casey and Gilliland exerted their authority and control over Defendant Ashworth, a sheriff's deputy, to effectuate the unlawful detention of Plaintiff.

60. Defendant Ratliff admitted on video that Plaintiff and his client were not served with the search warrant until after the cell phones were given to Plaintiff. As such, Plaintiff did not attempt to conceal evidence in contravention of the search warrant.

61. Defendant Ratliff's statement that Plaintiff was being detained until they could determine the next course of action further establishes that Defendants did not have any reasonable, articulable suspicion of illegal activity or arguable probable cause, but instead were trying come up with a reason to continue to hold these two attorneys.

14

62. Defendants Casey and Gilliland acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff of his constitutional rights when they unlawfully detained him.

63. This belief is based, in part, on the fact that their actions were ordered, authorized, and/or ratified by the Blount County District Attorney and Assistant District Attorney and based on Defendant Casey's public statement evidencing her belief that Plaintiff was attempting to "manipulate the judicial process and/or criminal justice system by public grandstanding" when he refused to voluntarily consent to a warrantless search.

64. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and any such other, different, and further relief which this Court finds he is entitled.

**COUNT THREE**
**UNLAWFUL ARREST**
**Violation of the Fourth and Fourteenth Amendments**
Pursuant to 42 U.S.C. §1983
(Against Defendants Sue Ashworth and Bryan Ratliff for Injunctive Relief)

65. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

66. Under the Fourth Amendment to the United States Constitution, Plaintiff has a right to be free from unreasonable searches and seizures. Plaintiff also has a constitutional right to remain silent and to peaceably refuse consent to a search, regardless of whether an officer lawfully requests to search Plaintiff's person or belongings.

67. On February 23, 2017, Defendants Ashworth and Ratliff deprived Plaintiff of his Fourth Amendment right to be secure in his person and free from unreasonable seizures by arresting him without a warrant, probable cause, or arguable probable cause.

68. No probable cause or arguable probable cause existed to arrest Plaintiff because there were no facts or circumstances within the knowledge of either Defendant Ashworth or Defendant Ratliff which would have caused a reasonable officer to believe that Plaintiff had committed or was about to commit an offense under the totality of the circumstances.

69. Plaintiff was arrested for obstructing governmental operations.

70. Plaintiff was also later charged with refusal to permit inspection.

71. Defendants violated Plaintiff's constitutional rights which were clearly established at the time of his arrest.

72. Defendants Ashworth and Ratliff acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff of his constitutional rights when they unlawfully arrested him for obstructing governmental operations and refusal to permit inspection.

73. Upon information and belief, these actions were taken pursuant to a governmental custom, policy and/or procedure of unlawfully arresting and detaining citizens who exercise their constitutional right to refuse consent to an unlawful search or seizure.

74. This belief is based, in part, on the fact that their actions were ordered, authorized, and/or ratified by the Blount County District Attorney and Assistant District Attorney and based on Defendant Casey's public statement evidencing her belief that Plaintiff was attempting to "manipulate the judicial process and/or criminal justice system by public grandstanding" when he refused to voluntarily consent to a warrantless search.

75. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and any such other, different, and further relief which this Court finds he is entitled.

**COUNT FOUR**
**UNLAWFUL ARREST**
**Violation of the Fourth and Fourteenth Amendments**
Pursuant to 42 U.S.C. §1983
(Against Defendants Pamela Casey and Scott Gilliland)

76. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

77. Under the Fourth Amendment to the United States Constitution, Plaintiff has a right to be free from unreasonable searches and seizures. Plaintiff also has a constitutional right to remain silent and to peaceably refuse consent to a search, regardless of whether an officer lawfully requests to search Plaintiff's person or belongings.

78. On February 23, 2017, Defendants Casey and Gilliland deprived Plaintiff of his Fourth Amendment right to be secure in his person and free from unreasonable seizures by directing the Blount County sheriff's deputies to arrest him, with full knowledge that there was no warrant, probable cause, or arguable probable cause authorizing said arrest.

79. Upon Plaintiff's refusal to consent to the search of the satchel, Defendant Ashworth relayed that information to Defendants Casey and Gilliland, as she was required to do under Alabama law. *See McMillian*, 520 U.S. at 790-91. Defendants Casey and Gilliland then instructed Defendant Ashworth to arrest Plaintiff, who in turn instructed Defendant Ratliff to place Plaintiff under arrest. As such, Defendants Casey and Gilliland exerted their authority and control over Defendant Ashworth, a sheriff's deputy, to effectuate the unlawful arrest of Plaintiff.

80. No probable cause or arguable probable cause existed to arrest Plaintiff because there were no facts or circumstances within the knowledge of any of the Defendants which would have caused a reasonable person or officer to believe that Plaintiff had committed or was about to commit an offense under the totality of the circumstances.

81. Plaintiff was arrested for obstructing governmental operations.

82. Plaintiff was also later charged with refusal to permit inspection.

83. Defendants violated Plaintiff's constitutional rights which were clearly established at the time of his arrest.

84. Defendants Casey and Gilliland acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff of his constitutional rights when they unlawfully arrested him.

85. The actions of these Defendants, taken on behalf of the Blount County District Attorney's office deprive and/or chill federal constitutional rights, state constitutional rights and state statutory rights of all similarly situated individuals. Upon information and belief, these actions were taken pursuant to a governmental custom, policy and/or procedure of unlawfully arresting and detaining citizens who exercise their constitutional right to refuse consent to an unlawful search or seizure.

86. This belief is based, in part, on the fact that their actions were ordered, authorized, and/or ratified by the Blount County District Attorney and Assistant District Attorney and based on Defendant Casey's public statement evidencing her belief that Plaintiff was attempting to "manipulate the judicial process and/or criminal justice system by public grandstanding" when he refused to voluntarily consent to a warrantless search.

87. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and any such other, different, and further relief which this Court finds he is entitled.

**COUNT FIVE**
**FALSE IMPRISONMENT**
**Violation of the Fourth and Fourteenth Amendments**
Pursuant to 42 U.S.C. §1983
(Against Defendants Sue Ashworth and Bryan Ratliff for Injunctive Relief)

88. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

89. Under the Fourth Amendment to the United States Constitution, Plaintiff has a right to be free from unreasonable searches and seizures. Plaintiff also has a constitutional right to remain silent and to peaceably refuse consent to a search, regardless of whether an officer lawfully requests to search Plaintiff's person or belongings and a constitutional right to not be falsely detained and deprived of their liberty.

90. On February 23, 2017, Defendants Ashworth and Ratliff deprived Plaintiff of his Fourth Amendment right to be secure in his person and free from unreasonable seizures by arresting him without a warrant, probable cause, or arguable probable cause and detaining him in the Blount County jail for approximately four hours before he was released on bond. The Defendants also required Plaintiff to post bond instead of allowing him to be released on his own recognizance.

91. No probable cause or arguable probable cause existed to arrest Plaintiff at the time he was arrested because there were no facts or circumstances within the knowledge of either Defendant Ashworth or Defendant Ratliff which would have caused a reasonable officer to believe that Plaintiff had committed or was about to commit an offense under the totality of the circumstances.

92. Plaintiff was arrested for obstructing governmental operations.

93. Plaintiff was also later charged with refusal to permit inspection.

19

94. Plaintiff did not intentionally obstruct, impair or hinder Defendants Ashworth or Ratliff from executing the search warrant they had for Plaintiff's client and his vehicle.

95. Defendants violated Plaintiff's constitutional rights which were clearly established at the time of his arrest.

96. Defendants Ashworth and Ratliff acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff of his constitutional rights when they unlawfully detained him.

97. This resulted in the Plaintiff being unlawfully detained and deprived of his personal liberty for a length of time. Defendants intended to confine the Plaintiff and through their actions caused this confinement of which the Plaintiff was conscious of the confinement and resulting harm.

98. The actions of these Defendants, taken on behalf of the Blount County Sheriff's Office and the State of Alabama deprive and/or chill federal constitutional rights, state constitutional rights and state statutory rights of all similarly situated individuals. Upon information and belief, these actions were taken pursuant to a governmental custom, policy and/or procedure of unlawfully arresting and detaining citizens who exercise their constitutional right to refuse consent to an unlawful search or seizure.

99. This belief is based, in part, on the fact that their actions were ordered, authorized, and/or ratified by the Blount County District Attorney and Assistant District Attorney and based on Defendant Casey's public statement evidencing her belief that Plaintiff was attempting to "manipulate the judicial process and/or criminal justice system by public grandstanding" when he refused to voluntarily consent to a warrantless search.

100. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and any such other, different, and further relief which this Court finds he is entitled.

## COUNT SIX
### UNLAWFUL DETENTION FOLLOWING ARREST
**Violation of the Fourth and Fourteenth Amendments**
Pursuant to 42 U.S.C. §1983
(Against Defendants Pamela Casey and Scott Gilliland)

101. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

102. Under the Fourth Amendment to the United States Constitution, Plaintiff has a right to be free from unreasonable searches and seizures. Plaintiff also has a constitutional right to remain silent and to peaceably refuse consent to a search, regardless of whether an officer lawfully requests to search Plaintiff's person or belongings and a constitutional right to not be falsely detained and deprived of their liberty.

103. On February 23, 2017, Defendants Casey and Gilliland deprived Plaintiff of his Fourth Amendment right to be secure in his person and free from unreasonable seizures by directing the Blount County Sheriff's deputies to arrest and detain him without a warrant, arguable probable cause, or probable cause and detaining him in the Blount County jail for approximately four hours before he was released on bond. These Defendants also directed the Blount County jail officials to require Plaintiff to post bond instead of allowing him to be released on his own recognizance.

104. No probable cause or arguable probable cause existed to arrest Plaintiff at the time he was arrested because there were no facts or circumstances within the knowledge of any of the

Defendants which would have caused a reasonable person to believe that Plaintiff had committed or was about to commit an offense under the totality of the circumstances.

105. Plaintiff was arrested for obstructing governmental operations.

106. Plaintiff was also later charged with refusal to permit inspection.

107. Defendants violated Plaintiff's constitutional rights which were clearly established at the time of his arrest.

108. Defendants Casey and Gilliland acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff of his constitutional rights when they unlawfully detained him.

109. This resulted in the Plaintiff being unlawfully detained and deprived of his personal liberty for a length of time. Defendants intended to confine the Plaintiff and through their actions caused this confinement of which the Plaintiff was conscious of the confinement and resulting harm.

110. The actions of these Defendants, taken on behalf of Blount County deprive and/or chill federal constitutional rights, state constitutional rights and state statutory rights of all similarly situated individuals. Upon information and belief, these actions were taken pursuant to a governmental custom, policy and/or procedure of arresting and detaining citizens who exercise their constitutional right to refuse consent to an unlawful search or seizure.

111. This belief is based, in part, on the fact that their actions were ordered, authorized, and/or ratified by the Blount County District Attorney and Assistant District Attorney and based on Defendant Casey's public statement evidencing her belief that Plaintiff was attempting to "manipulate the judicial process and/or criminal justice system by public grandstanding" when he refused to voluntarily consent to a warrantless search.

112. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and any such other, different, and further relief which this Court finds he is entitled.

**COUNT SEVEN**
**MALICIOUS PROSECUTION**
**Violation of the Fourth and Fourteenth Amendments**
Pursuant to 42 U.S.C. §1983
(Against Defendants Pamela Casey, Sue Ashworth, Scott Gilliland, and Bryan Ratliff)

113. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

114. The Fourth Amendment to the United States Constitution, which protects individuals from unreasonable searches and seizures, also protects against malicious prosecution.

115. Defendants Ashworth and Ratliff instituted and continued criminal proceedings by arresting the Plaintiff.

116. Defendants Casey and Gilliland ("District Attorney Defendants") instituted and continued criminal proceedings against Plaintiff for obstructing governmental operations (Ala. Code §13A-10-2) and refusal to permit inspection (Ala. Code §13A-10-3). They did this by authorizing and ordering the arrest and then pursuing the prosecution. Furthermore, Defendant Casey performed these acts in her capacity as a policy maker at all times in this situation as she was a policy making official for law enforcement policy including determining probable cause or arguable probable cause to make an arrest in any situation.

117. No probable cause or arguable probable cause existed to arrest or prosecute Plaintiff for either charge because there were no facts or circumstances within the knowledge of any of the defendants which would have caused a reasonable person to believe that Plaintiff had committed those offenses under the totality of the circumstances.

23

118. On March 29, 2018, the Plaintiff was tried and acquitted of both criminal charges, thereby terminating the criminal proceedings in his favor. The judge granted the Plaintiff's request for judgment of acquittal at the close of the State's case. Assistant District Attorneys Crocker and Sparks performed the trial of the case on behalf of the State of Alabama.

119. Although Defendant Casey purportedly recused herself and did not attend the trial, she played an active part in prosecuting the case along with Assistant District Attorneys Crocker, Sparks, and Gilliland. Moreover, Defendant Casey never filed a motion to withdraw from Plaintiff's criminal case.

120. On or about March 16, 2018, only two weeks before Plaintiff's trial, Defendant Casey contacted and requested to meet with Plaintiff's client, Mr. Edwards, at Casey's office to prepare him for the trial and to draft his statement regarding the incident. Defendant Casey then met with Edwards who was formally under criminal investigation and represented by counsel.

121. Defendants Casey, Ashworth, Gilliland, and Ratliff acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive the Plaintiff of his constitutional rights when they unlawfully detained, arrested and prosecuted him.

122. The Defendants knew from the time the Plaintiff was first unlawfully detained, through the unlawful arrest ordered by Defendants Casey and Gilliland, and the unlawful detention pending release on bond, that Plaintiff was within his Constitutional right to refuse consent to a warrantless search and that there was no probable cause or arguable probable cause for charging him with any crime. Furthermore, prosecuting Plaintiff for these charges, with malice and full knowledge that they were baseless and in violation of Plaintiff's Constitutional rights, went beyond the authority of the Blount County District Attorney Pamela Casey and her Assistant District Attorneys.

123. Defendants instituted and continued the criminal prosecution of the Plaintiff with malice and without probable cause. The actions terminated in the Plaintiff's favor with a full acquittal and were instigated because of the actions of the Defendants. As detailed below, the Plaintiff experienced severe damage.

124. This would qualify as Malicious Prosecution under the common law of Alabama.

125. The actions of these Defendants, taken on behalf of Blount County deprive and/or chill federal constitutional rights, state constitutional rights and state statutory rights of all similarly situated individuals. Upon information and belief, these actions were taken pursuant to a governmental custom, policy and/or procedure of arresting citizens who exercise their constitutional right to refuse consent to an unlawful search or seizure.

126. This belief is based, in part, on the fact that their actions were ordered, authorized, and/or ratified by the Blount County District Attorney and Assistant District Attorney and based on Defendant Casey's public statement evidencing her belief that Plaintiff was attempting to "manipulate the judicial process and/or criminal justice system by public grandstanding" when he refused to voluntarily consent to a warrantless search.

127. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, his costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988, and any such other, different, and further relief which this Court finds he is entitled.

### COUNT EIGHT
### MALICIOUS PROSECUTION
### State Law Claim
(Against Defendants Pamela Casey, Sue Ashworth, Scott Gilliland, and Bryan Ratliff)

128. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

129. Defendants Ashworth and Ratliff instituted and continued criminal proceedings by arresting the Plaintiff.

130. Defendants Casey and Gilliland ("District Attorney Defendants") instituted and continued the judicial proceedings against Plaintiff for obstructing governmental operations (Ala. Code §13A-10-2) and refusal to permit inspection (Ala. Code §13A-10-3). Furthermore, Defendant Casey performed these acts in her capacity as a policy maker at all times in this situation as she was a policy making official for law enforcement policy including determining probable cause or arguable probable cause to make an arrest in any situation

131. No probable cause or arguable probable cause existed to arrest or prosecute Plaintiff at the time he was arrested because there were no facts or circumstances within the knowledge of any Defendant which would have caused a reasonable person to believe that Plaintiff had committed or was about to commit an offense. Under the totality of the circumstances.

132. On March 29, 2018, the Plaintiff was tried and acquitted of both criminal charges, thereby terminating the criminal proceedings in his favor. Assistant District Attorneys Crocker and Sparks performed the trial of the case on behalf of the State of Alabama.

133. Although Defendant Casey purportedly recused herself and did not attend the trial, she played an active part in prosecuting the case along with Assistant District Attorneys Crocker, Sparks, and Gilliland. Moreover, Defendant Casey never filed a motion to withdraw from Plaintiff's criminal case.

134. On or about March 16, 2018, only two weeks before Plaintiff's trial, Defendant Casey met with Plaintiff's client, Mr. Edwards, at Casey's office to prepare him for the trial and to draft his statement regarding the incident.

135. The Defendants knew from the time the Plaintiff was first unlawfully detained, through the unlawful arrest ordered by Defendants Casey and Gilliland, and the unlawful detention pending release on bond, that Plaintiff was within his Constitutional right to refuse consent to a warrantless search and that there was absolutely no probable cause or arguable probable cause for charging him with any crime. Furthermore, prosecuting Plaintiff for these charges, with malice and with full knowledge that they were baseless and in violation of Plaintiff's Constitutional rights, went beyond the authority of the Blount County District Attorney Pamela Casey and her Assistant District Attorneys.

136. Defendants instituted and continued the criminal prosecution of the Plaintiff with malice and without probable cause. The actions terminated in the Plaintiff's favor with a full acquittal and were instigated because of the actions of the Defendants.

137. The actions of these Defendants, taken on behalf of Blount County deprive and/or chill federal constitutional rights, state constitutional rights and state statutory rights of all similarly situated individuals. Upon information and belief, these actions were taken pursuant to a governmental custom, policy and/or procedure of arresting citizens who exercise their constitutional right to refuse consent to an unlawful search or seizure.

138. This belief is based, in part, on the fact that their actions were ordered, authorized, and/or ratified by the Blount County District Attorney and Assistant District Attorney and based on Defendant Casey's public statement evidencing her belief that Plaintiff was attempting to "manipulate the judicial process and/or criminal justice system by public grandstanding" when he refused to voluntarily consent to a warrantless search.

139. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

**COUNT NINE**
**FALSE IMPRISONMENT**
**Ala. Code §6-5-170**
(Against Defendants Casey and Gilliland)

140. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

141. Defendants Pamela Casey and Scott Gilliland caused the unlawful detention of Plaintiff whereby he was deprived of his personal liberty. Specifically, Defendants Casey and Gilliland directed the Blount County sheriff's deputies to detain Plaintiff in front of the Blount County Courthouse for approximately 30 minutes, with full knowledge that there was no warrant, probable cause, reasonable suspicion of unlawful activity, arguable probable cause, or any other lawful reason justifying the detention, as fully described herein.

142. The Defendants' initial detention of Plaintiff was not conducted for the purposes of investigating criminal activity, as there was no reasonable, articulable suspicion of any illegal activity, or arguable probable cause. The purpose of stopping the Plaintiff and his client was to execute a search warrant upon Plaintiff's client. With full knowledge that the search warrant did not include Plaintiff's person or the satchel, the Defendants instructed Defendant Ashworth to continue to detain Plaintiff. This continued detention deprived Plaintiff of his personal liberty and was not conducted in good faith, but with disregard to Plaintiff's constitutional rights.

143. Defendant Ratliff's statement that Plaintiff was being detained until they could determine the next course of action further establishes that Defendants did not have any reasonable,

articulable suspicion of illegal activity or arguable probable cause, but instead were trying come up with a reason to continue to hold these two attorneys.

144. These Defendants also directed that Plaintiff be detained at the Blount County jail for approximately four hours until his bond could be posted, as opposed to allowing him to be released on his own recognizance.

145. Specifically, the District Attorney Defendants knew from the time the Plaintiff was first unlawfully detained, through the unlawful arrest ordered by Defendants Casey and Gilliland, and the unlawful detention pending release on bond that Plaintiff was within his Constitutional right to refuse consent to a warrantless search and that there was absolutely no probable cause for charging him with any crime. Furthermore, detaining Plaintiff with malice and with full knowledge that the charges against him were baseless and in violation of Plaintiff's Constitutional rights, went beyond the authority of the Blount County District Attorney Pamela Casey and her Assistant District Attorney, Scott Gilliland.

146. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

**COUNT TEN**
**DEFAMATION**
**State Law Claim**
(Against Defendant Pamela Casey)

147. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

148. In Alabama, Defamation is defined as:

"1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement

irrespective of special harm or the existence of special harm caused by the publication of the statement." *Walmart Stores, Inc. v. Smitherman*, 872 So.2d 833 (Ala. 2003).

149. Defendant Pamela Casey published a false and defamatory statement concerning Plaintiff during an interview with a journalist, which was then published online, accusing Plaintiff of intentionally trying to conceal evidence of child pornography from law enforcement. Specifically, Defendant Casey told the press that "[w]ithin minutes of learning that their client was alleged to have used his cell phone to produce and/or view child pornography, Mr. Revill and Ms. Garcia took possession of their client's phones and attempted to conceal the phones from law enforcement." Defendant Casey further accused Plaintiff, an attorney practicing in the state of Alabama, of "attempt[ing] to manipulate the judicial process and/or criminal justice system by public grandstanding." According to the newspaper website, the article including these statements has been shared online hundreds of times. This qualifies as publication.

150. These statements are false. Plaintiff had no knowledge of the actual contents of the phone, much less that there was purportedly child pornography on the phone (a fact that was never mentioned or proven at trial). Furthermore, the search warrant for the cell phones was not served upon Plaintiff or his client until after his client had given him the cell phones. Therefore, the fact that Plaintiff took possession of the cell phones does not establish an intention to conceal evidence from law enforcement.

151. Defendant Casey intentionally published the false and defamatory statement concerning Plaintiff with malice and hostility, for the purpose of subjecting Plaintiff to disgrace, ridicule, and contempt and knew that the statements were false. Defendant Casey was grossly negligent in making these statements knowing or should have known there was no evidence that

the cell phones contained pornography nor any evidence that Plaintiff had knowledge of the contents of the cell phones.

152. Defendant Casey previously demonstrated ill will, hostility, and threats of arrest  in response to Plaintiff's exercise of his constitutional right to refuse consent to a warrantless search by directing the Sheriff's deputies to detain him in handcuffs in front of the courthouse for at least 30 minutes, by directing the Sheriff's deputies to arrest him without a warrant or probable cause, and by directing that Plaintiff be held in the Blount County jail for approximately four hours until he could post bond, instead of allowing him to be released on his own recognizance.

153. The previous ill will, hostility, and threats demonstrated by Defendant Casey's actions, in addition to the publication of these false and defamatory statements to the press for the purpose of wide-spread publication, establishes Defendant Casey's malice.

154. On August 3, 2018, retraction demand of the above comments was served on Defendant Casey pursuant to Ala. Code (1975) § 6-5-186.  No retraction has been made.

155. Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

156. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

**COUNT ELEVEN**
**DEFAMATION**
**Alabama State Law Claim**
(Against Defendant Scott Gilliland in his Individual Capacity)

157.   The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

158. In Alabama, Defamation is defined as:

"1) a false *and* defamatory statement concerning the plaintiff; 2) an unprivileged communication of that statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement." *Walmart Stores, Inc. v. Smitherman*, 872 So.2d 833 (Ala. 2003).

159. Defendant Scott Gilliland published a false and defamatory statement concerning Plaintiff which accused him of intentionally trying to conceal evidence of child pornography from law enforcement. Specifically, while Plaintiff was being unlawfully detained in front of the Blount County Courthouse, Defendant Gilliland came out of the courthouse, stood in the doorway holding the door open, and made the statement "y'all the ones knowingly in possession of child pornography? That was a bad mistake."

160. This statement is false. Plaintiff had no knowledge of the actual contents of the phone, much less that there was purportedly child pornography on the phone (a fact that was never alleged much less proven at trial). Furthermore, the search warrant for the cell phones was not served upon Plaintiff or his client until after his client had given him the cell phones. Therefore, the fact that Plaintiff took possession of the cell phones does not establish an intention to conceal evidence from law enforcement.

161. The statement was made in front of numerous people who were standing outside of the courthouse in the vicinity of Plaintiff, and potentially to anyone else who may have been standing just inside of the courthouse. This qualifies as publication.

162. Upon information and belief, Defendant Gilliland made this false and defamatory statement with malice and in bad faith. Defendant Gilliland was also grossly negligent in making this statement knowing or should have known there was no evidence that the cell phones contained pornography nor any evidence that Plaintiff had knowledge of the contents of the cell phones.

32

163. Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

164. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

**COUNT TWELVE**
**INVASION OF PRIVACY – FALSE LIGHT**
**Alabama State Law Claim**
(Against Defendants Pamela Casey and Scott Gilliland)

165. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein. Invasion of Privacy – False Light is defined by the Supreme Court of Alabama as:

> "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> > (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
> > (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Regions Bank v. Plott*, 897 So.2d 239 (Ala. 2004).

166. Defendants Pamela Casey and Scott Gilliland both gave publicity to a matter concerning Plaintiff that placed him before the public in a false light that would be highly offensive to a reasonable person. Both Defendants had knowledge of or, at the least acted in reckless disregard to, the falsity of the publicized matter and the false light in which Plaintiff would be placed.

167. Defendant Pamela Casey gave publicity to a false and defamatory statement concerning Plaintiff during an interview with a news journalist, which was then published online,

33

accusing him of intentionally attempting to conceal evidence of child pornography from law enforcement. Specifically, Defendant Casey told the press that "[w]ithin minutes of learning that their client was alleged to have used his cell phone to produce and/or view child pornography, Mr. Revill and Ms. Garcia took possession of their client's phones and attempted to conceal the phones from law enforcement." Defendant Casey further accused Plaintiff, an attorney practicing in the state of Alabama, of "attempt[ing] to manipulate the judicial process and/or criminal justice system by public grandstanding." According to the newspaper's website, the article had been shared online hundreds of times.

168. Defendant Gilliland made the statement "y'all the ones knowingly in possession of child pornography? That was a bad mistake." This statement was made in front of numerous people who were standing outside of the courthouse in the vicinity of Plaintiff, and potentially to anyone else who may have been standing just inside of the courthouse. These statements are false as Plaintiff had no knowledge of the actual contents of the phone.

169. Furthermore, the search warrant for the cell phones was not served upon Plaintiff or his client until after his client had given him the cell phones. Therefore, the fact that Plaintiff took possession of the cell phones does not establish an intention to conceal evidence from law enforcement.

170. These statements placed Plaintiff in a false light, particularly within his professional/legal community. Plaintiff lost significant revenue due to lost clients based, in part, on the statements and allegations made public by Defendants Casey and Gilliland.

171. Plaintiff suffered a loss of liberty, embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

172. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

**COUNT THIRTEEN**
**WRONGFUL INTERFERENCE WITH BUSINESS RELATIONSHIPS**
**Alabama State Law Claim**
(Against Defendants Pamela Casey and Scott Gilliland)

173. The Plaintiff re-alleges and incorporates by reference the above paragraphs with the same force and effect as if fully set out in specific detail herein.

174. "Under Alabama law, the tort of wrongful interference with a business relationship has five elements: (1) the existence of a protected business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage. *White Sands Group, LLC v. PRS II, LLC,* 32 So.3d 5 (Ala.2009)." *Edwards v. Prime, Inc.*, 602 F.3d 1276 (11th Cir. 2010).

175. Plaintiff, as an attorney and business owner, had protectible business relationships, including both existing contracts with clients and reasonable expectancies of business relationships with other clients.

176. Defendants Pamela Casey and Scott Gilliland knew that Plaintiff was an attorney and knew that he had or expected to have business relationships with both existing and future clients.

177. Both Defendants were strangers to the business relationships Plaintiff had with existing clients and would be strangers to the business relationships he would have with clients in the future.

178. Defendants intentionally interfered with Plaintiff's business relationships by making false and defamatory statements in the news media impugning Plaintiff's reputation as an attorney,

35

accusing him of intentionally concealing evidence of child pornography from law enforcement, and attempting to manipulate the judicial process and the criminal justice system.

179. As a result of the Defendants' tortious conduct, Plaintiff has suffered pecuniary loss of the benefits of the relationships, consequential losses for which the interference is a legal cause, emotional distress and actual harm to Plaintiff's professional reputation resulting from the interference. Specifically, Plaintiff has lost several clients who had indicated their intentions to retain Plaintiff to handle their legal matters, but instead hired other attorneys after becoming aware of Plaintiff's arrest. Plaintiff has no doubt lost potential clients who may have considered retaining him but did not because of the public perception of Plaintiff and his law firm. Plaintiff suffered embarrassment, humiliation, pain and suffering, mental and emotional distress, among other injuries and damages.

180. **WHEREFORE**, Plaintiff seeks such compensatory and punitive damages as a jury may reward, attorneys' fees, and any such other, different, and further relief which this Court finds he is entitled.

## PRAYER FOR RELIEF

Based on the legal and factual allegations stated herein, the Plaintiff respectfully prays that this Court will assume jurisdiction of this action and, after a jury trial, provide relief as follows:

1. Render a judgment finding the Defendants jointly and/or severally liable for the aforementioned causes of action;

2. Render a judgment permanently enjoining Defendants from enforcing their customs, policies, patterns, and practices as described herein that violate constitutional rights.

3.      Retaining jurisdiction over this action and ordering the Defendants to implement and enforce proper policies and practices including appropriate training and supervision to protect individuals from infringement of their constitutional rights.

4.      Issue an order requiring the Defendant(s) to pay the Plaintiff nominal, compensatory, and punitive damages, as applicable;

5.      Pursuant to 42 U.S.C. § 1988, issue an order requiring the Defendant to pay for all litigation costs, expenses and reasonable attorney's fees associated with the filing of this action;

6.      Issue an order requiring the Defendant to pay for all litigation costs, expenses, and reasonable attorney's fees associate with the filing of this action;

7.      Issue an order requiring the Defendant to pay for all litigation costs, expenses, and reasonable attorney's fees associate with the defense of Plaintiff against the unlawful charges and arrest; and

8.      Grant to the Plaintiff any such and all other, further, different, general or special relief as in equity the Plaintiff may be entitled.

**<u>JURY TRIAL DEMANDED</u>**

Respectfully Submitted,

*/s/ Clayton R. Tartt*
CLAYTON R. TARTT
ASB – 9981C57T

*/s/ Kent W. Frost*
KENT W. FROST
ASB – 8072N48E

OF COUNSEL:
Boles Holmes Parkman White, LLC
1929 3rd Ave. N.
Suite 700

Birmingham, AL 35203
205-502-2000
ctartt@bhpwlaw.com
kfrost@bhpwlaw.com

**PLEASE SERVE THE FOLLOWING BY CERTIFIED MAIL**

41st Judicial Circuit, District Attorney's Office
Attn: Pamela Casey
220 2nd Ave E Ste 210
Oneonta, AL 35121-1702

41st Judicial Circuit, District Attorney's Office
Attn: Scott Gilliland
220 2nd Ave E Ste 210
Oneonta, AL 35121-1702

Blount County Sheriff's Office
Attn: Officer Bryan K. Ratliff
225 Industrial Park Rd
Oneonta, Alabama

Sue Ashworth
8485 Pine Mountain Road
Springville, AL 35146-8010

Sue Ashworth
5601 State Highway 180
Apartment 2601
Gulf Shores, AL 36542-8346

Office of the Attorney General
Attn: Steve Marshall
P.O. Box 300152
Montgomery, AL 36130-0152