FILED
2019 Feb-20  PM 05:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **VICTOR REVILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO.:** |
| | ) | **2:19-CV-114-RDP** |
| **PAMELA CASEY, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS' PAMELA CASEY AND SCOTT GILLILAND'S MOTION TO DISMISS

COME NOW Blount County District Attorney, Pamela Casey and Blount County Assistant District Attorney, Scott Gilliland[1] through undersigned counsel and pursuant to Rule 12(b)(6) respectfully ask that they be dismissed with prejudice as Defendants in this case and as grounds therefore show as follows:

## OVERVIEW

Plaintiff claims Blount County's District Attorney Pamela Casey and Assistant District Attorney, Scott Gilliland, violated his Fourth and Fourteenth Amendment rights when he was allegedly unlawfully arrested by deputy sheriffs

---

[1] Blount County's District Attorney and Assistant District Attorney are two (2) of four (4) Defendants int this case.  Undersigned counsel does not represent the other two (2) Defendants namely, Blount County Sheriff's Deputy, Sue Ashworth and Blount County Sheriff's Deputy Bryan Ratliff.  (Doc. 1, p. 2).

on February 23, 2017, after he appeared in court on behalf of a client in a DHR related matter.

Plaintiff speculates he was arrested based on the District Attorney (DA) and Assistant District Attorney's (Assistant DA) alleged flawed advice and/or at the DA's direction. Plaintiff further claims the DA and Assistant DA prosecuted him based on unverified, unreliable allegations and that the DA and Assistant DA further defamed him based on the same unverified and unreliable allegations.

On January 18, 2019, Plaintiff filed a more than 180 paragraph, 38-page lawsuit against, among others, the DA and Assistant DA in their individual capacity only alleging: Unlawful Investigatory Detention (Count One), Unlawful Arrest (Count Four), Unlawful Detention Following Arrest (Count Six), and Malicious Prosecution (Count Seven). (Doc. 1, pp. 13-15; pp. 17-18; pp. 21-23). Plaintiff also brought pendant state law claims against them alleging: Malicious Prosecution, (Count Eight); False Imprisonment, (Count Nine) Defamation (Counts Ten and Eleven); Invasion of Privacy- False Light (Count Twelve); and Wrongful Interference with Business Relationships (Count Thirteen). (Doc. 1, pp. 25-28; 28-29; 29-31; 31-33; 33-35; 35-36).

Plaintiff is suing Pamela Casey and Scott Gilliland in their individual capacity for alleged actions they took in their capacity as Blount County's District Attorney and Assistant District Attorney that were within their discretionary

authority.   (Doc.1, p.1, ¶ 1; p.2, ¶¶ 5-6; p. 3, ¶ 9 p. 10, ¶37).   Based on these alleged discretionary actions the DA and Assistant DA are immune from suit and therefore must be dismissed at the outset as parties to this action.   Immunities that apply include absolute prosecutorial immunity, qualified immunity and/or state-agent immunity.   Plaintiff has further failed to state a claim against the DA and Assistant DA for which relief can be granted.

## SUMMARY OF ALLEGATIONS

The Plaintiff is an attorney who practices law in the following areas: criminal defense, family law, civil rights, personal injury and employment law cases.  (Doc. 1, p. 3, ¶ 9).  He, along with another attorney, Megan Garcia[2], who has filed a separate 42 USC § 1983 lawsuit based on the same events, has filed suit against Pamela Casey and Scott Gilliland for, as noted above, alleged actions they each took in their official capacities as Blount County's DA and Assistant DA. (Doc. 1, p. 1, ¶ 1; p. 2, ¶¶ 5-6; p. 3, ¶ 9).  According to the Plaintiff, at all relevant times, the Defendants were acting within the scope of their discretionary authority as Blount County district attorneys.  (Doc. 1, p. 10, ¶ 37).

On February 23, 2017, Plaintiff and his associate Ms. Garcia appeared at a Protection from Abuse hearing in Blount County on behalf of one of their clients,

---

[2] At all times relevant to this Complaint, Megan Garcia was an associate attorney working at Plaintiff's firm. (Doc. 1, p. 3, ¶ 9).

Lloyd Edwards, whose wife was seeking a protection from abuse order. (Doc. 1, p. 3, ¶ 10). Before the actual proceedings, Plaintiff had a discussion with opposing counsel wherein it was allegedly revealed that Plaintiff's client's wife had allegedly been "sexting" Plaintiff's client after she filed the Protection from Abuse petition. (Doc. 1, p. 3, ¶ 10).

After the hearing, Plaintiff's client, Mr. Edwards, allegedly informed Plaintiff he had evidence of this aforementioned "sexting" on three of his cell phones, but that only one of the three cell phones still had service. (Doc. 1, p. 3, ¶ 11). Plaintiff claims he asked Mr. Edwards to give him the two cell phones that were no longer in service, so they could retrieve the images and texts from the cell phones upon their return to the office. (Doc. 1, p. 3-4, ¶ 11). Mr. Edwards handed over two of his cell phones and kept the working cell phone in his possession. (Doc. 1, p. 4, ¶ 11). Plaintiff then handed his client's two cell phones to his associate, Ms. Garcia, who placed them in her briefcase/satchel. (Doc. 1, p. 4, ¶ 11).

This exchange, which was videotaped by law enforcement, appeared to be an attempt by the Plaintiff and his associate to conceal their client's phones from law enforcement. (Doc. 1, p. 4, ¶ 15, p. 8, ¶ 29). The DA and Assistant DA understood that the Plaintiff and his associate took possession of their client's cell

phones within minutes of learning that their client was alleged to have used his cell phone to produce and/or view child pornography.  (Doc. 1, p. 8, ¶ 29).

Shortly after Plaintiff's client gave the Plaintiff two of his three cell phones, the three of them exited the Blount County Courthouse.  At that time, a deputy sheriff, Ratliff, approached and informed their client, Mr. Edwards that he had a warrant to search Mr. Edwards' person and vehicle.  (Doc. 1, p. 4, ¶¶ 12, 13, and 14).  The search warrant was for any device or devices, including the subject's cell phone or cell phones, which were believed to contain child pornography.  (Doc. 1, p. 8, ¶ 29).

According to Plaintiff, he instructed Mr. Edwards to comply with the officer and Mr. Edwards produced the phone that was on his person.  (Doc. 1, p. 4, ¶¶ 13, 15).  However, Plaintiff refused to voluntarily produce the cell phones their client had handed him and that he in turn handed to Ms. Garcia, who then put them in her satchel, because the satchel was outside the scope of the search warrant.  (Doc. 1, p. 4, ¶¶15, 16).  In refusing to allow a search of his person, Plaintiff claims he exercised his constitutional right to refuse consent to a search.  (Doc. 1, p. 5, ¶ 16).  Plaintiff claims their client's phone and information on that phone were allegedly work product and part of the attorney-client relationship and purportedly entrusted to Plaintiff for use in the Protection from Abuse matter.  (Doc. 1, p. 4-5, ¶ 16).

Plaintiff alleges Deputy Sheriff Ratliff told him, ". . . that we are going to detain you until we determine the next course of action" while another deputy sheriff, who called Blount County's DA and Assistant DA, was overheard saying the following during this phone call: "we're standing here.  We have it on video that he handed his cell phone to his attorney one and then handed it to another and it's in the satchel that is right here," and who added "they're not denying it.  We have them on video . . . What I have is his person and vehicle."  (Doc. 1, p. 5, ¶¶ 17, 18, and 19).  Significantly, the Complaint only provides the deputy sheriff's side of this phone conversation.

According to the Plaintiff, Deputy Sheriff Ashworth turned to the Plaintiff and Ms. Garcia and informed them, "we either need the phone out of the satchel or we will have to detain you and get a search warrant to get the phone."  (Doc. 1, p. 5, ¶ 19).  In response, Plaintiff said "We're not going to give you . . . anything that's on our person that you don't have a right to . . .. (Doc. 1, p. 5, ¶ 20).  Plaintiff insists that neither he nor Ms. Garcia prevented the deputy sheriffs from seizing the cell phones, but would simply not consent to being searched.  (Doc. 1, p. 6, ¶¶ 21, 23).

Plaintiff alleges that after the Deputy Sheriff Ashworth called and purportedly spoke to the DA "and possibly others on the phone briefly" he informed them they were both under arrest for obstructing governmental

operations.  (Doc. 1, p. 5-6, ¶ 21).  And, even though the Complaint is completely silent regarding what may have been said by the DA and/or Assistant DA during Deputy Sheriff Ashworth's referenced phone call, Plaintiff nevertheless emphatically alleges that their arrest was "[U]nder the authority and instruction of [the DA] and others."  (Doc. 1, p. 5-6, ¶ 21).

Deputy Sheriffs Ashworth and Ratliff proceeded to arrest them, without reference to the DA or Assistant DA, even though Plaintiff informed them that this was an unlawful arrest.  (Doc. 1, p. 6, ¶ 22).  Plaintiff alleges there was no probable cause or arguable probable cause for his arrest since there was no language on the face of the warrant allowing the search of the Plaintiff, Ms. Garcia, or any items possessed by them; it was for Mr. Edwards' person and vehicle.  (Doc. 1, p. 8, ¶ 28).  However, it was Deputy Sheriff Ashworth's position that if the Plaintiff was subject to the law, which he was, then he was under arrest.  (Doc. 1, p. 6, ¶¶ 21, 22).

Plaintiff alleges that while he was standing outside the Blount County Courthouse in handcuffs, the Assistant DA came out of the courthouse and said to Plaintiff and Ms. Garcia, "Y'all the ones knowingly in possession of child pornography?  That was a bad mistake."  (Doc. 1, p. 6-7, ¶¶ 24, 25).  This is the only alleged statement attributed to the Assistant DA throughout the Complaint. Plaintiff claims he knew nothing about the alleged child pornography and that the

Assistant DA's alleged unfounded statement was based solely on an unreliable source namely Mr. Edwards' wife, who the Assistant DA purportedly knew was hostile towards Mr. Edwards and his attorneys, the Plaintiff and Ms. Garcia. (Doc. 1, p. 7, ¶ 25).

Plaintiff was taken to the Blount County Jail where he was booked and placed in a holding cell where he remained for approximately four (4) hours until he paid a $3,000 bond for his release. (Doc. 1, p. 7, ¶ 27). Plaintiff also was required to pay a $3,000 bond for Megan Garcia to be released. (Doc. 1, p. 7, ¶ 27). When Plaintiff was released, he was informed that in addition to Obstruction of Governmental Operations, he was also being charged with Refusing to Permit Inspection. (Doc. 1, p. 7, ¶ 27).

Following Plaintiff's arrest, the DA made a statement to the press, which was published online on March 17, 2017. This statement, which is the only statement in the Complaint that is attributed to the DA, is set forth in pertinent part as follows:

> ". . . it is a crime for anyone, even a lawyer, to intentionally prevent a public servant from performing a governmental function or refuse to permit inspection of property that a public servant is legally authorized to inspect. In this case, she said, officers had a search warrant seeking recovery of any device or devices, including the subject's cell phone or cell phones, which were believed to contain child pornography. (Doc. 1, p. 8, ¶ 29).
>
> "Within minutes of learning that their client was alleged to have used his cell phone to produce and/or view child pornography, Mr. Revill

and Ms. Garcia took possession of their client's phones and attempted to conceal the phones from law enforcement," Casey said. "Such acts are not only illegal, but unethical.  Rule 3.4 of the Alabama Rules of Professional Conduct provides that a lawyer shall not unlawfully obstruct another party's access to evidence or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value.  A lawyer shall not counsel or assist another person to do any such act."  (Doc. 1, p. 8, ¶ 29).

Plaintiff claims that, like the Assistant DA's above referenced alleged unfounded statement, the DA's statement was allegedly made with no actual knowledge or reason to believe that the Plaintiff knew of any child pornography on the cell phones in issue and based on the same unreliable and hostile source, Mr. Edwards' wife.  (Doc. 1, p. 8, ¶ 30).  Plaintiff maintains that the alleged statements made by the DA and the Assistant DA were without factual basis, defamatory, "false and at the very least reckless."  (Doc. 1, p. 8, ¶ 30).

Shortly after the charges were brought, the DA recused herself from the prosecution and temporary assistant district attorneys were appointed to prosecute the case.  (Doc. 1, p. 9, ¶¶ 31, 32).  Nevertheless, Plaintiff claims the DA played an active part in prosecuting the case along with the assistant DA.  (Doc. 1, p. 9, ¶ 33).  However, although Plaintiff was able to provide a minor example of the DA allegedly meeting with the Plaintiff's former client to prepare him for the trial, (Doc. 1, p. 9, ¶¶ 33, 34), the Complaint appears to be devoid of any specific allegations regarding the Assistant DA's alleged involvement beyond the referenced conclusory allegation.

On March 29, 2018, the Plaintiff and Ms. Garcia were tried for Obstructing

Governmental Operations (Ala. Code §13A-10-2) and Refusal to Permit Inspection

(Ala. Code §13A-10-3). (Doc. 1, p. 9, ¶ 35).  At the close of the State's case, the

Defense moved for an acquittal and the trial court dismissed the charges against

Plaintiff and Ms. Garcia.  Plaintiff was acquitted of all charges.  (Doc. 1, p. 9, ¶

35).

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a

defendant may move to dismiss a complaint on the basis that the Plaintiff has

failed to state a claim upon which relief may be granted.  See Fed. R. Civ. P.

12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged. . . . [This

standard] asks for more than a sheer possibility that a defendant has acted

unlawfully." Id. at 678. That is, "[f]actual allegations must be enough to raise a

right to relief above the speculative level," and must be a "'plain statement'

possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"

Twombly, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  In determining whether a claim is stated, the factual allegations are accepted as true, except for conclusory assertions or a recitation of a cause of action's elements, and the allegations must be considered in the light most favorable to the Plaintiff.  See id.; Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997).

However, "[a] complaint is subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim.'" Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003)).   A complaint is also subject to dismissal "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  Such is the case here.

## LEGAL ARGUMENT

### The District Attorney Assistant District Attorney are Entitled to Absolute Prosecutorial Immunity.

Plaintiff's above-referenced claims against the DA and Assistant DA appear to be based on conjecture; regardless, they are barred by the doctrine of absolute prosecutorial immunity.  See Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47

L.Ed.2d 128 (1976), (finding that state prosecutors are entitled to absolute immunity from 42 U.S.C. § 1983 lawsuits).  Absolute immunity would not be absolute if it did not support a motion to dismiss.  To hold otherwise would subject the prosecutor to numerous vexatious summary judgment proceedings and would undercut the very foundation of the rule.

"[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983."  Id.  A prosecutor is entitled to absolute immunity for all actions performed within the scope of the prosecutor's role as a government advocate, including "the initiation and pursuit of criminal prosecution, and most appearances before the court, including examining witnesses and presenting evidence."  Rivera v. Leal, 359 F.3d 1350, 1353 (11th Cir. 2004).

The facts of Imbler extended absolute immunity to allegations that a prosecutor knowingly used false testimony and suppressed material evidence at trial.  The Fifth Circuit decision of Henzel v. Gerstein, 608 F.2d 654 (5th Cir. 1979) [binding in the Eleventh Circuit pursuant to Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981)] and Fullman v. Graddick, 739 F.2d 553 (11th Cir. 1984) establish the broad parameters of prosecutorial immunity.  In Henzel, the Court held that allegations of filing an information without an investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony,

suppressing exculpatory evidence, refusing to investigate complaints about the prison and threatening a defendant with further criminal prosecution were within the absolute immunity recognized in <u>Imbler</u> and could not be the basis for recovery under § 1983.   In <u>Fullman</u>, the Eleventh Circuit held immune the following activities: (1) a conspiracy in connection with the issuance of a search warrant; (2) the interrogation of the defendant; (3) the signing of an arrest warrant; and (4) the withholding of material evidence the prosecution knew would aid defendant's defense.

The design of absolute prosecutorial immunity protects government officials not only from having to stand trial, but also from having to bear the other burdens of litigation, including pretrial discovery.  The rationale for prosecutorial immunity is the same as judicial immunity in that there was a desire to eliminate fear of potential liability that would undermine a prosecutor's performance of his duties by forcing him to consider his own potential liability when making prosecutorial decisions and by diverting his energy and attention from the pressing duty of enforcing the criminal law.  <u>See</u> <u>Imbler</u>, 424 U.S. at 424-425 (1975).

Where absolute immunity applies, dismissal is proper without further consideration.  Absolute immunity applies in this case given the fact that the Plaintiffs vague and unsupported claims against the DA and Assistant DA unquestionably fall within the band of prosecutorial immunity.   Also, under 42

13

U.S.C. § 1983, in a constitutional tort action, Plaintiff must specifically allege facts showing how the alleged acts of these two Defendants are outside and beyond the scope of prosecutorial immunity. See Bogle v Galanus, 503 So.2d 1217 (Ala. 1987). Plaintiff has failed to meet his burden.

Plaintiff has also asserted claims against the DA and Assistant DA under Alabama state law based upon the above allegations for malicious prosecution, false imprisonment, defamation, invasion of privacy – false light and alleged wrongful interference with business relationships. (Doc. 1, pp. 25-28; 28-29; 29-31; 31-33; 33-35; 35-36). Under Alabama law, these claims are also barred by prosecutorial immunity. Bogle at 1219 (Ala. 1987) ("it is sufficient to say that the [prosecutorial] immunity under state law in this case is at least as broad as immunity under a § 1983 action"); see Pardue v. City of Saraland, Civ. A. No. 99--0799-CG-M, 2011 WL 130332, at *6 n.3 (S.D. Ala. Jan. 14, 2011).

Plaintiff has not stated a cognizable claim against either Pamela Casey or Scott Gilliland, as their alleged actions taken in their capacity as Blount County's DA and Assistant DA are protected by absolute prosecutorial immunity. Lawson v Georgia, 2008 WL 1817974.

### The District Attorney and Assistant District Attorney are Entitled to Qualified Immunity.

The DA and Assistant DA are clearly entitled to absolute prosecutorial immunity on all claims brought against them. However, the DA and Assistant DA

14

are also entitled to qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002). To be entitled to qualified immunity, an official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Id. at 1194. This is undisputed here, as the Plaintiff has acknowledged that, at all relevant times, the Defendants were acting within the scope of their discretionary authority as Blount County District Attorneys. (Doc. 1, p. 10, ¶ 37). As the DA and Assistant DA were acting within the scope of their discretionary authority, the burden shifts to the Plaintiff to establish "(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (quotation marks omitted). Where a Plaintiff alleges that the Defendants "engaged in a myriad of unlawful and improper conduct, only the conduct that caused [the plaintiff's] alleged constitutional injury is relevant to the discretionary authority inquiry." Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1283 (11th Cir. 1998).

To deprive the prosecutors of qualified immunity Plaintiff must show that their alleged actions violated a statutory or constitutional right that was clearly established at the time of their conduct.  Ashcroft, 563 U.S. at 735, 131 S.Ct. at 2080.  However, if at the time of the prosecutors' alleged actions the law was not clearly established that their alleged actions violated Plaintiff's Fourth and Fourteenth Amendment rights, the Court need not decide whether their actions actually did violate Plaintiff's rights.  See Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).  A government official's conduct violates clearly established law when, at the time of the alleged conduct, the contours of the right are sufficiently clear that every "reasonable official would have understood that what he is doing violates that right."  Ashcroft, 563 U.S. at 741, 131 S.Ct. at 2083.

Plaintiff argues that the Defendants violated his Fourth Amendment right to be secure in his person and to refuse to consent to an alleged unlawful search or seizure when he was allegedly unlawfully arrested, detained, and imprisoned without a warrant or probable cause or arguable probable cause.  (Doc. 1, pp. 9-10, ¶¶ 36, 38, 39).  Plaintiff further argues that right was "clearly established" by the Plaintiff on February 23, 2017, and that these Defendants had fair warning that their alleged actions toward the Plaintiff were unconstitutional.  (Doc. 1, p. 10, ¶ 38).

However, notwithstanding Plaintiff's above-referenced self-serving argument, "The salient question is whether the state of the law at the time of an incident provided 'fair warning' to the defendants that their alleged conduct was unconstitutional." Salvato v. Miley, 790 F.3d 1286, 1292 (11th Cir. 2015). That standard does "not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." Ashcroft, 563 U.S. at 741, 131 S.Ct. at 2083. "[The Court] look[s] only to binding precedent – holdings of cases drawn from the United States Supreme Court, this Court, or the highest court of the state where the [conduct] took place." Gilmore v. Hodges, 738 F.3d 266, 277 (11th Cir. 2013).

The DA and Assistant DA assert that there is no binding applicable decision issued that clearly establishes that what they are alleged through conjecture to have done in this case violated the Fourth and/or Fourteenth Amendment. In order for the law to be clearly established to the point that qualified immunity does not apply, the unlawfulness of their alleged actions must be apparent in light of pre-existing law. Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002). No pre-existing law compelled that conclusion for these prosecutors under the circumstances of this case; as a result, the DA and the Assistant DA are entitled to qualified immunity.

## <u>The District Attorney and Assistant District Attorney are</u><br><u>Entitled to State-Agent Immunity</u>.

Plaintiff asserts that at all times relevant to this Complaint the DA and Assistant DA were acting under color of state law in the course and scope of their employment as Blount County's District Attorney and Assistant District Attorney. (Doc. 1 , ¶¶ 5-6).  In that capacity, they were each exercising their judgment in executing their work responsibilities.   "State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities."  <u>Ex parte City of Montgomery</u>, 19 So 3d 838 (Ala 2009) citing <u>Ex parte Hayles</u>, 852 So.2d 117, 122 (Ala. 2002).  In light of the foregoing the DA and Assistant DA are also entitled to State-agent immunity.

WHEREFORE PREMISES CONSIDERED, these Defendants respectfully request that they be dismissed with prejudice as parties to this action.

Respectfully submitted,

STEVE MARSHALL
ATTORNEY GENERAL


 /s/ MARY GOLDTHWAITE
MARY GOLDTHWAITE
Assistant Attorney General
Counsel for Pamela Casey and
Scott Gilliland

18

OF COUNSEL:

OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL  36130
(334) 353-9189
(334) 242-2433 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that I have on February 20, 2019, electronically filed the Defendants' Pamela Casey and Scott Gilliland's Motion to Dismiss with the Clerk of the Court, using the CM/ECF filing system, and that I have further served the foregoing upon the following parties, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Alan Lasseter                              David Gespass
301 19th Street North              GESPASS & JOHNSON
Suite 580                                   P.O. Box 550242
Birmingham, AL 35203-3145    Birmingham, AL 35255-0242

  /s/ MARY GOLDTHWAITE
OF COUNSEL