IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

**MEGAN GARCIA,**

    **Plaintiff**

v.      **Case No. 2:18-cv-2079-SGC**

**PAMELA CASEY, et al.**

    **Defendants**

---

**VICTOR REVILL,**

    **Plaintiff**

v.      **Case No. 2:19-cv-114-RDP**

**PAMELA CASEY, et al.,**

    **Defendants**      *THIS DOCUMENT RELATES*
*TO CASE NO. 2:19-cv-2079-KOB*

## MOTION FOR RECONSIDERATION

Plaintiff, Megan Garcia, through her undersigned counsel, moves this Court to reconsider its order dismissing her second and third causes of action alleging defamation by defendants Gilliland and Casey respectively. As grounds, she contends that those false and defamatory statements were not, as this Court held, protected by state agent immunity because they did not fall into any category that would provide such immunity and because these defendants did not even assert that the statements were made in the context of their official duties. She elaborates below.

### CATEGORIES FOR WHICH STATE AGENT IMMUNITY APPLIES

As is well known, the case which defines state agent immunity in Alabama is *Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000). While *Cranman* is a plurality opinion, it has since been

adopted as the law by the Alabama Supreme Court. See *Ex parte Butts*, 775 So. 2d 173 (Ala. 2000). While this Court's opinion emphasized the exceptions to state agent immunity set out in *Cranman* and found they did not apply to the allegations in plaintiff's amended complaint (Doc. 18), the appropriate consideration should have been the actions for which immunity is available in the first place. These are:

>   (1) formulating plans, policies, or designs; or

>   (2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:

>   (a) making administrative adjudications;
>   (b) allocating resources;
>   (c) negotiating contracts;
>   (d) hiring, firing, transferring, assigning, or supervising personnel; or

>   (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent perform the duties in that manner; or

>   (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law enforcement officers' arresting or attempting to arrest persons; or

>   (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

*Id*. at 405.

Quite clearly, gratuitous statements made to the media or snide comments directed to the plaintiff herself in front of other people have nothing to do with any of the activities for which state agents enjoy immunity, whether or not they act willfully, maliciously, fraudulently, in bad faith, beyond their authority or under a mistaken interpretation of the law. In short, the alleged defamatory statements had nothing to due with these defendants' official duties.

If, for example, a district attorney from Lowndes County, had made such statements, plaintiff would have no recourse, however damaging to her reputation they might have been, except for a claim of defamation. The Lowndes County district attorney would not have been involved in plaintiff's arrest and, indeed, would not have been acting in any official capacity. Yet it is clear that plaintiff, in such circumstances, would have the option of suing for defamation precisely because those statements would have had nothing to do with the official duties or functions of the Lowndes County district attorney's office. The same logic applies here. These defendants initiated plaintiff's prosecution as part of their official duties, but their gratuitous statements – not made in any court filing or official document – have no more protection than would such statements made by anyone else.

To take another example, if one of the defendants were to run a stop sign and hit another car on their way to court from their office, they would still be personally liable for damages, despite their having been engaged in official duties before leaving and despite being on their way to engage in official duties. Here too, liability for non-official actions does not change simply because they were engaged in official duties as a prelude to their defamatory statements. Otherwise, their intentional false statements would have more protection than would negligent operation of an automobile.

In neither of these examples would state agent immunity come into play even though the actors were district attorneys. It would not come into play precisely because the tortious conduct would be unrelated to their official duties. The only difference in this case is that the defamation was in the context of unconstitutional conduct committed by the defendants prior to their making their statements. Nevertheless, the defamatory statements, while stemming from such conduct, were separate and apart from it because they were gratuitous and unrelated to any of the defendants'

official duties. The fact that they commented on plaintiff's actions, or alleged actions, which led to her arrest at the behest of these defendants does not elevate what they said to either discretionary or ministerial acts by government actors in their capacity as such.

### DEFENDANTS NEVER ASSERTED THEIR DEFAMATORY STATEMENTS WERE MADE IN THE CONTEXT OF A FUNCTION FOR WHICH IMMUNITY IS AVAILABLE

This Court's memorandum opinion notes that "the test to determine whether state-agent immunity applies begins with a showing *by the defendant* that he was acting in a function that would entitle him to such immunity (emphasis added). Doc. 46, p. 23, citing *Brown v. City of Huntsville, Ala.*, 608 F. 3d 724, 741 (11th Cir. 2010). Defendants never argued that their statements were made in the context of such a function. See Doc. 26. Thus, plaintiff was under no obligation to demonstrate they were acting in such a context. Had such an assertion been made, for the reasons stated in this motion's previous section, plaintiff would have refuted it.

Defendants claim that "Plaintiff alleges that, at all relevant times, to this action, the DA was allegedly a policy making official regarding law enforcement policy, and that her alleged complained of actions were taken allegedly in her capacity as a policy maker. Plaintiff further alleges that at all times relevant to this action Gilliland was a Blount County Assistant DA acting under color of state law (internal references omitted)." Doc. 26, p. 15. They then claim that the burden shifts to plaintiff to demonstrate they were not protected by state agent immunity. This was the extent to which defendants claimed they were acting within the scope of their official duties.

This assertion, and this Court's adoption of it, constitute a hyper-technical and irrational interpretation of plaintiff's amended complaint. The fact is, as plaintiff alleged, these defendants

were at all times relevant to the complaint the District Attorney and Assistant District Attorney respectively.

Plaintiff did allege that Casey's "actions . . . were taken under color of state law and in her capacity as a policy maker. Doc. 18, ¶ 5. The clear (albeit not as explicit at it might have been) meaning of the complaint, taken as a whole, is that her instructions to Ashworth were made pursuant to her policy making authority, not that her statements to the media were done under that authority. Certainly, the media reported her statements because of her position as the District Attorney, but her duties obviously do not extend to making comments – defamatory or otherwise – to news reporters.

As to Gilliland, the complaint's allegation was even narrower, saying only that he "was at all times relevant to this action a Blount County Assistant District Attorney acting under color of state law." *Id.*, ¶ 6. It did not say that everything he said and did during the relevant time period was in his capacity as an Assistant District Attorney but that, as an Assistant District Attorney he was acting under color of state law. When he went home and had dinner, for instance, he was still an Assistant District Attorney but that activity is clearly not a part of his official duties.

The idea that statements not made in court or in court filings, or some other official document, are elevated to having the imprimatur of the office a state agent just because they are made by a state agent is, on its face, ludicrous. Plaintiff could have been more explicit in distinguishing between the §1983 claim against defendants alleging violation of her rights under color of state law and the defamatory comments they made, but it is hard to conceive that those comments were a part of their official duties. Plaintiff asserts that the more reasonable reading of her complaint, taken as a whole, is that the defamation claim (against these defendants in their *individual* capacities) did not allege anything done pursuant to their official duties. Plaintiff did not, in her

amended complaint, incorporate by reference all the allegations she had made previously. She specified in each count that the claim was made in relation to the specific statements made by each defendant respectively.[1]

Rule 8(a)(2), Fed. R. Civ. P., only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." It cannot be gainsaid that the Amended Complaint provided defendants with adequate notice of the nature of plaintiff's claims against them and the facts on which those claims are based. And it is clear from the amended complaint that the defamation counts were based only on the statements made and their falsity. That is all that is required at this stage.

## ALABAMA CASE LAW SUPPORTS A MORE
## GENEROUS READING OF THE AMENDED COMPLAINT

Finally, to the extent it is appropriate to consider, the case law in Alabama addressing state agent immunity does not require so fine a reading of a complaint as this Court's memorandum opinion applies and provides some indication, admittedly oblique, that a defamation claim is not a claim for which a state agent can assert immunity.

It has long been the law in Alabama that, in addressing a Rule 12(b)(6) motion to dismiss, the court does not consider whether the plaintiff will ultimately prevail, only whether he has stated a claim under which he may possibly prevail." *Patton v. Black*, 646 So. 2d 8, 10 (Ala. 1994), citing *Karagan v. City of Mobile*, 420 So. 2d 57 (Ala. 1982). Although *Patton* was decided before the

---

[1] The Eleventh Circuit has repeatedly criticized "shotgun pleadings." See, for example, *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F. 3d 955, 979 (11th Cir. 2008). Plaintiff here tried, if not entirely successfully, to make clear in her defamation counts that the factual allegations in the complaint supporting those claims were the statements made by these defendants and nothing else. See *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77 F. 3d 364, 366 (11th Cir. 1996).`

*Twombly/Iqbal* change in the pleading standard for complaints, it was cited for this proposition in *Duran v. Buckner*, 157 So. 3d 956, 977-978 (Ala. Civ. App. 2014), which also emphasized *Patton*'s admonition that "it is a rare case" in which state agent immunity would lead to granting a motion to dismiss. *Duran* at 978.

In *Gary v. Crouch*, 867 So. 2d 310, 313-314 (Ala. 2003), it was held that "(p)eace-officer immunity, like State agent immunity, does not provide immunity from liability for the commission of an intentional tort, but only for negligence in the exercise of judgment." Nothing can be more intentional (even if it reflects poor judgment) than defamation. Parenthetically, plaintiff denies knowing that there was child pornography on the cell phones she was given. To this day, she does not know if there was or not. She only knows what her then-client told her, which related to his protection from abuse case and correspondence with his then-wife.

In *Ex parte Harris*, 216 So. 3d 1201, 1215-1216 (Ala. 2016), a grant of summary judgment was affirmed by the Alabama Supreme Court. It noted, however, that the basis for the summary judgment motion on the libel claim, along with several others, that had been asserted was not that the defendant was entitled to state agent immunity but that those claims were not supported by the evidence. Other claims were found to be protected by state agent immunity. While the mention of this certainly does not rise to the level of binding precedent, it does indicate that others can distinguish between official actions protected by state agent immunity and unofficial actions not so protected, perhaps because they were familiar with *Gary v. Crouch*.

## CONCLUSION

In light of the foregoing arguments, plaintiff requests that this Court reconsider its decision

to dismiss the defamation claims against defendants Casey and Gilliland and, upon reconsideration, reinstate those claims.

    /s/ Alan Lasseter
Alan Lasseter
301 19th Street North
Suite 580
Birmingham, AL 35203-3145
205-458-1212
alan@lasseterlaw.com

    /s/ David Gespass
David Gespass
GESPASS & JOHNSON
P.O. Box 550242
Birmingham, AL 35255-0242
205-323-5966
205-323-5990 (fax)
pass.gandjlaw@gmail.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served on all counsel this the 9th day of August, 2019 through this Court's CM/ECF electronic case filing system.

    /s /David Gespass