IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VICTOR REVILL, ) | |
|    *Plaintiff* ) | |
| ) | |
| v. ) | Case No.: 2:19-CV-00114-KOB |
| ) | |
| PAMELA CASEY, ET AL., ) | |
|    *Defendants*. ) | |

| | |
|---|---|
| MEGAN GARCIA, ) | |
|    *Plaintiff* ) | |
| ) | |
| v. ) | Case No.: 2:18-CV-02079-KOB |
| ) | |
| PAMELA CASEY, ET AL., ) | |
|    *Defendants*. ) | |

**PLAINTIFF REVILL'S REPLY TO DEFENDANTS GILLILAND'S AND CASEY'S RESPONSE IN OPPOSITION TO REVILL'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW the Plaintiff, Victor Revill, by and through his undersigned counsel submits his reply in support of his motion for partial summary judgment. In doing so, he adopts and incorporates as if fully set forth herein the argument made by Plaintiff Garcia in her reply (ECF No. 168).[1] Revill states as follows:

---

[1] The document numbers cited here are as they appear on the pleadings in case number 2:19-cv-00114-KOB.

1

I. **Factual Allegations**

Plaintiff Revill disputes several of Defendants Casey's and Gilliland's "Additional Undisputed Facts" advanced in their response in opposition to Mr. Revill's Motion for Summary Judgment. Each response in this document corresponds with the paragraph number in ECF No. 157.

2. Revill disputes these facts as presented to the extent that Defendants' repeated attempts to characterize Gilliland's statement as a question are misleading. Tone of voice aside, the video depicts Gilliland turning to walk back inside the courthouse while finishing making the statement. (Ex. F at 27:40).[2] His actions show that he was not anticipating a response to any "question," and was instead making a statement. (*Id.*). Further, Defendants' argument that no other individuals were present at the time the statements were made fails to note that a citizen exited the courthouse door just seconds after Gilliland's statement (Ex. F at 27:54), and there are numerous law enforcement officers present when the statement is made. (Ex. F at 27:35-27:50). Garcia testified that "[t]here was a group of people outside the courthouse, and then there was also the clerk's front desk inside

---

[2] As in his previous filings, Revill's exhibit numbers identified without a specific document number referenced are those included in his previous summary judgment pleadings. Those exhibits that are before the Court through a Defendants' filing will be identified by ECF document number and its corresponding exhibit identification.

the courthouse" when Gilliland made this statement (ECF No. 127, Ex. X, p. 81-82, ll. 23, 1-2).

3. While Revill does not necessarily dispute the facts in this paragraph, he notes they are irrelevant to this action.

5. Revill disputes this fact to the extent it is irrelevant to this case and emphasizes that here there was no "conversation" with Plaintiffs as to the nature of the charges and allegations against them – Gilliland's statement concerned the possession of child pornography, not the obstruction of governmental operations. (Ex. F at 27:28-27:43). Further, Revill calls into question the notion that prosecutors commonly have conversations with pro se defendants moments after they are arrested and still in handcuffs. (*See Id*).  This is particularly true in light of the fact that Gilliland had no legitimate investigatory or legal purpose in "questioning" the plaintiffs while they sat handcuffed after being arrested. In fact, he has repeatedly stressed in filings that he could not be involved in the prosecution because he could have been a witness in the criminal trial.

7. Revill disputes this fact to the extent it again classifies Gilliland's statement as a question, when it is clearly not, for the same reasons as explained in ¶ 2.

8. Garcia never testified to "dismay over the unrestricted release of the police body cam video to reporters." She did, however, testify that "[n]ow anywhere I go, I have to think, this DA told all the world via video that I'm knowingly possessing child pornography" (ECF No. 127, Ex. X, p. 439, ll. 11-14). Garcia further spoke to her concerns that Gilliland would repeat what he said to others inside the courtroom in addition to concerns that Blount County law enforcement officers would believe she knowingly possessed child pornography. (*Id*. at 437, ll. 9-23).

9. The attention Plaintiff Garcia received after her arrest was due to the fact that she was an attorney who had been unlawfully detained, arrested, and falsely accused of knowingly possessing child pornography. (*Id*. at p. 287, ll. 15-23; p. 288 ll. 1-2).

10. Revill disputes Casey's assertion that her comments to media were made "in accordance with National Prosecutor Standards." National Prosecutor Standards note that prosecutors "should refrain from making extrajudicial comments . . . that promote no legitimate law enforcement purpose and that serve solely to heighten public condemnation of the accused." (ECF No. 136-1, attachment at 2-14.2).[3] On February 24, 2017, Al.com

---

[3] Revill disputes this statement of fact with the understanding that the purpose of this litigation is not for the purpose of determining the limits of the National Prosecutor Standards for media engagement or whether Casey acted in conformity therewith.

published an article about the Plaintiffs' arrests with a statement from Ms. Casey identifying this case as one involving child sex abuse[,]" implying Plaintiffs' arrests were based on a sex offense, rather then a refusal to search. (Ex. P). One of these offenses is clearly more inflammatory that the other.

11. Revill disputes that an email sent by one of his employees to an Al.com reporter was after his release from jail. Revill testified that he was unsure of his exact time of release and that does not know whether it was before or after the email was sent. (ECF No. 127, Ex. Y, p. 464 ll. 18-21; pp. 484-85, ll. 12-23, 1-20).

13. Revill disputes this factual allegation insofar that it characterizes his actions as having "sought out" media attention. To the contrary, Revill's actions were taken in mitigation to the already released news about his arrest in order to protect his reputation as an individual and as an attorney. (*Id*. at p. 415, ll. 1-22).

14. Revill disputes that the actions of his defense counsel are material, without waiving any argument that Defendants' characterization is inaccurate.[4]

---

[4] The language alleged as disparaging to the District Attorney's Office does no more than make the same arguments raised in this lawsuit:

Further, Revill disputes this claim based on a plain reading of the article itself. Casey's statements include that "it is a crime for anyone, even a *lawyer*, to intentionally prevent a public servant from performing a governmental function"; "a *lawyer* shall not [obstruct access to evidence]"; "a *lawyer* shall not counsel or assist another person [to obstruct access to evidence]"; and that her office "will not be intimidated by a *lawyer* or anyone else." (ECF No. 127, Ex. W) (emphasis added). Casey's statements are clearly about Plaintiffs.

16. Revill disputes that the actions of his defense counsel are relevant or material, without waiving any argument that Defendants' characterization

---

The law is very clear on this point—simply asserting your constitutional right in refusing to consent to a search is not a crime. However, the sheriff's department and district attorney's office in Blount County decided otherwise and arrested these two law abiding attorneys. . . . While we had hoped that the Blount County District Attorney's office would have done the right thing and dismissed the charges after viewing the video in this case, it does not seem that this is going to happen. They have had the video for over two weeks now without doing anything. Very soon, my office will be filing a motion to dismiss that should resolve the matter. If not, we cannot wait to get into court and try this case. However it happens, I am positive that Victor and Megan will be fully exonerated of these baseless charges.

Ex. T (this exhibit continues with the numbering from Plaintiffs' previously filed summary judgment pleadings).

is inaccurate. The portion of the record purported to support Defendants' factual claim here is also unclear as pages 254-255 of ECF No. 136-21 do not exist

17. Revill disputes this fact to the extent it misleadingly implies that Revill did not further testify, in response to a hypothetical posed by defense counsel, that he would, when presented with a difficult ethical question, consult the State Bar. Revill's response was further qualified by whether additional facts existed under the same hypothetical. (ECF No. 127, Ex. Y at p. 508, ll. 7-25; p. 509, ll. 1-8). Moreover, nothing more than speculation shows Revill knowingly took possession of a phone containing child pornography as presented in the hypothetical.

**II.    Argument**

The DA Defendants' response argues that Revill is not entitled to relief as to his defamation claims due to: (1) § 14 Immunity; (2) State-Agent Immunity; (3) Absolute Privilege; (4) Qualified Privilege; (5) Plaintiff's failure to show special damages; and (6) Plaintiff's failure to satisfy the "publication" element as to

Gilliland. ECF No. 157, p. 18-30.[5] Revill need not address § 14 immunity or state-agent immunity, as these claims have already been litigated and ruled upon at the motion to dismiss stage and Defendants have not cited any additional facts developed through discovery that would change that analysis. *See* ECF No. 46, Revised Memorandum Opinion. As to the issue of absolute and qualified privilege, Revill notes that he adopts and incorporates Garcia's reply. Revill briefly addresses Defendants' remaining points below.

> a. *Revill has no burden to provide evidence of special damages.*

Defendants unpersuasively claim that Revill has failed to meet his burden of showing he suffered special damages as a result of Defendants' public statements. Because of the nature of the statements themselves, Plaintiffs are not under any such burden. Only "[w]hen the language used is not actionable per se," does the Plaintiff need to show special damages. *Myers v. Mobile Press-Register, Inc.*, 97 So. 2d 819, 821 (Ala. 1957).

---

[5] The DA Defendants also claim that their statements at issue cannot be defamatory because they were true. In order for all the statements to be true, Plaintiffs would have knowingly been in possession of child pornography and had conspired with their client to conceal the devices containing illegal images. Aside from the arguments advanced by Plaintiffs in their motions for summary judgment, the most obvious counterargument to this "truth defense" is the fact that neither Revill nor Garcia have been charged with any state or federal offense involving possession of child pornography, conspiracy, or attempt.

Here, the DA Defendants' statements are actionable per se. "Spoken words that impute to the person of whom they are spoken the commission of an indictable criminal offense involving infamy or moral turpitude constitute slander actionable per se." *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085 (Ala. 1988). The possession of child pornography is undoubtedly within the realm of offenses involving moral turpitude. *See Chapman v. Gooden*, 974 So. 2d 972, 977 (Ala. 2007) (citing "possession with intent to distribute" child pornography and the "possession of obscene matter" as offenses involving moral turpitude according to an opinion issued by the Attorney General's office). Thus, Revill has not failed to meet a burden to show special damages because Defendants' statements were defamatory per se.

> b. *Gilliland published his statement for the purposes of bringing a defamation claim.*

Defendant Gilliland's statement meets the "publication" requirement for defamation. In arguing otherwise, Defendants cite no case law for the proposition that a statement made by an assistant district attorney in the presence of law enforcement is not communication to a third party. Importantly, the video shows officers aside from those present for the purpose of executing the search warrant. Additionally, Gilliland's statements were made in front of Mr. Edwards and any other individuals who may have been in proximity to hear exactly what he said.

Under Alabama law, a defamation claim requires a showing that "the defendant publishe[d] defamatory material about the plaintiff to a third party." *Rowe*

9

*v. Isbell*, 599 So. 2d 35, 36 (Ala. 1992). In *Rowe*, a defendant-employer accused the plaintiff-employee of stealing and stated that she was fired for "that dishonest act." *Id.* Those statements were made in front of the plaintiff's husband as well as her co-workers. *Id*. Those statements were "published" based in part on the fact that there was nothing in the record to establish that the plaintiff's husband was acting as her agent or that the defendant's statements as to the plaintiff were made "in the course of the employees' employment and was within the proper scope of their duties." *Id*.

It is apparent in the body cam video that law enforcement officers were present, and Mr. Edwards heard Gilliland's statement. (*See* Ex. F). Edwards's presence as Plaintiffs' client does not exempt him from being a third party, nor does simply being a law enforcement officer, particularly ones who were not directly involved in executing the search warrant.

The Plaintiffs have presented "evidence that the statement was actually heard and that the third person understood the defamatory nature of the statement and its actionable character." That is all that is required to survive summary judgment. Tellingly, the case law cited in support of Defendants' argument to the contrary comes exclusively from Ohio state courts. Further, it is apparent from the video that others aside from Plaintiffs heard and understood what Gilliland said. Plaintiffs' claim against Gilliland meets the publication requirement. Therefore, Defendants'

argument that Plaintiffs have not presented a viable defamation claim as to Gilliland is incorrect.

WHEREFORE, premises considered, Plaintiffs' motions for partial summary judgment are due to be granted.

Respectfully submitted,

**/s/ Clayton R. Tartt**
Clayton R. Tartt (asb-9981-c57t)
**/s/ Suzanne R. Norman**
Suzanne R. Norman (asb-1703-m06o)
*Counsel for Plaintiff Victor Revill*

**OF COUNSEL:**

**BOLES HOLMES PARKMAN WHITE LLC**
1929 Third Avenue North, Suite 500
Birmingham, AL 35203
Telephone: 205-502-2000
Facsimile: 205-847-1285
Email: ctartt@bhpwlaw.com
       snorman@bhpwlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2021, I electronically filed the foregoing with the Clerk of Court via the CM/ECF system, which will cause copies to be electronically served upon all counsel of record.

**/s/ Clayton R. Tartt**
OF COUNSEL